BRIAN H. MAHANY,
(brianmahanylaw.com)
THE MAHANY LAW FIRM
P.O. Box 511328
Milwaukee, Wisconsin 53202
Telephone:  (414) 258-2375
Facsimile:  (414) 258-2521

**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN
(MILWAUKEE DIVISION)**

| | | |
|---|---|---|
| LAMONT LATHAN, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED, | § § § § | CIVIL ACTION NO. _____ |
| *Plaintiff*, | § § | **CLASS ACTION COMPLAINT AND JURY DEMAND** |
| vs. | § § | |
| UBER TECHNOLOGIES, INC. AND TRAVIS KALANICK, | § § § § | |
| *Defendants*. | § | |

**COMPLAINT AND JURY DEMAND**

Plaintiff Lamont Lathan on behalf of himself and all other individuals who have worked or are currently working in Wisconsin as drivers for Defendants Uber Technologies, Inc. and Travis Kalanick (collectively, "Uber"), allege the following:

**INTRODUCTION**

1.  This is a suit brought on behalf of all current and former Uber drivers in Wisconsin asking the court to properly classify Wisconsin Uber drivers as employees as opposed to their current misclassification by Defendants as independent contractors, to recover unpaid overtime wages and compensation, as well compensation, including overtime wages for hours

worked but not recorded or paid ("off-the-clock" work), reimbursement of all expenses incurred in performing their work as Uber drivers, and payment of all gratuities that were earned but stolen by Uber or were lost due to Defendants' communications and policies.

2. With an estimated market capitalization in excess of 50 billion dollars, Uber is one of the wealthiest and largest companies in America. Despite its riches, many of its drivers struggle to bring home a livable wage. For many, it is not even possible to make a minimum wage. When insurance, vehicle maintenance, depreciation, gasoline, repairs and licensing fees are factored in, many drivers struggle to survive.

3. At the core of this lawsuit is Uber's failure to properly classify its drivers as employees. This action goes far beyond minimum wage however. By improperly classifying its drivers as "independent contractors," Uber denies its drivers overtime, tips, workers compensation and other benefits.

4. Uber exploits its drivers to bolster its bottom line and continue its rapid expansion to what now amounts to a presence in 482 global cities. Uber's position is that it is not a transportation company, but a technology company that provides an application for anyone who wants an alternative to a traditional taxi service, or in the instant case, desires an opportunity to work for themselves. It attempts to circumvent the traditional transportation company model, and all expenses and obligations that come with it, including the expenses related to having employees. Uber seeks to have all of the benefits of having thousands of Wisconsin employees, with none of the expenses, obligations, or risks. Uber contends that its Wisconsin drivers work independently and, therefore, they are independent contractors. Though it likes to call itself a technology company, Uber is a transportation company. Uber does not sell software; it sells rides.

5. Uber refuses to pay for its expenses and foists all expenses onto its employees. The result is that its drivers cannot earn minimum wage. In reality, Uber drivers frequently earn less than a living wage. Moreover, to further squeeze profits from what should be expenses, Uber routinely misappropriates money from drivers' fares and/or tips and shirks its financial commitments.

6. Uber falsifies the employment status of its drivers. Though Uber exercises near complete control over its drivers, and many of its drivers work the equivalent of two full-time jobs for Uber, it classifies drivers as "independent contractors," rather than "employees."

7. Uber misrepresents how drivers are paid so that it can retain a larger percentage of the fares that the drivers generate. Uber tells customers that gratuity is included in the fares charged when they use Uber's electronic payment service. In reality, however, Uber fails to remit the gratuity to its drivers.

8. Plaintiff brings this action to prevent Uber from continuing to ride roughshod over its drivers' contractual and statutory rights and to return to Uber's drivers what is rightfully theirs – what they earned.

9. Accordingly, Plaintiff seeks to recover damages for Uber's numerous violations of Wisconsin Wage Payment Laws, Chapters 104.001 *et seq.* and 109 *et seq.* of the Wisconsin Statutes, and Wisconsin Administrative Code Sections DWD 272.001 *et seq.* and 274.01 *et seq.* for its: (a) failure to provide prompt payment of wages to drivers upon termination and resignation; (2) misclassification of its employees as independent contractors; (3) failure to keep required payroll records; and (4) failure to pay overtime and minimum wages.

10. Plaintiff also seeks to recover damages for Uber's many common-law violations: (a) tortious interference with prospective business relations; (b) breach of contract; (c) promissory estoppel; (d) unjust enrichment; (e) conversion; (f) unfair competition; and (g) fraud.

## PARTIES

11. Plaintiff Lamont Lathan is a citizen of the State of Wisconsin and a resident of Milwaukee County. Plaintiff's Class are current and former employees of Defendants who worked as drivers and were and are misclassified by Defendants as independent contractors.

12. Uber Technologies, Inc. is a Delaware corporation headquartered in San Francisco, California. Uber Technologies, Inc. is authorized to conduct business and does conduct business throughout Wisconsin, including in Milwaukee County. According to its website, Uber has local offices in this District located at 161 W. Wisconsin Ave., 2nd Floor, Milwaukee, WI 53203.

13. Defendant Travis Kalanick is a resident of California and the CEO of Uber. He may be served with service of process at Uber's corporate headquarters located at 1455 Market Street, FL 4, San Francisco, CA 94103-1355, or wherever he may be found. At all relevant times, Uber was an "employer" within the meaning of all applicable statutes.

14. At all relevant times, the work performed by Plaintiff and similarly situated employees was directly essential to the business operated by Defendants.

## JURISDICTION AND VENUE

15. This Court has subject matter jurisdiction over the controversy pursuant to 28 U.S.C. § 1332(a) because Plaintiff and the proposed Class are residents of the State of Wisconsin and Defendants are foreign corporations incorporated in the State of Delaware with principal offices in the State of California. The amount in controversy exceeds $75,000.

16. Venue is proper in the Eastern District pursuant to 28 U.S.C. § 1391 as the events and conduct giving rise to the claims occurred in this District. Furthermore, Plaintiff resides in this District.

## STATEMENT OF FACTS

### A. Plaintiff Lamont Lathan

17. In February 2016, Plaintiff Lamont Lathan began working for Uber as an Uber Driver and he worked for Uber for multiple months.

18. On average, Plaintiff drove about fifteen hours per week.

19. Uber compensates its drivers weekly. Uber takes approximately 20% of the total fares and the driver receives the remaining 80%.

20. Depending on the number of hours driven per week, Plaintiff Lathan was compensated between $30-$60 per week and incurred approximately $60 per week in expenses, including gas, lease payments, and car repairs. Lathan's weekly payments therefore paid him less than the required minimum wage and at no time did Uber reimburse Plaintiff for the expenses he incurred while working for Uber and in furtherance of Uber's business.

21. Lathan is aware of many drivers that routinely worked in excess of 40 hours per week and these drivers were not paid any sort of hourly wage nor were they paid overtime.

22. Plaintiff believes that he was not compensated for trips that lasted less than ½ mile. Plaintiff brought his concerns to the local Milwaukee Uber Office who indicated that he was paid for the shorter trips. However, Plaintiff's daily accrual log does not show his earnings for these trips

### B. Uber Increases its Profits by Deceiving its Drivers

23. Uber routinely misappropriates money from its drivers' fares. Specifically, Uber deducts a $1 "safe ride" fee from each fare, which is allegedly used to pay for background checks, driver safety education, and development of safety features in its mobile application. This is an expense that Uber, the employer, should pay. This deduction further increases Defendants' percentage of the fare it receives.

24. Uber routinely fails to honor its financial commitments to its drivers. For example, Uber's contract provides that drivers must be compensated $6.00 for cancelled fares, but Uber failed to compensate Plaintiff for any of his cancelled fares. Plaintiff was unaware of the amount he was to receive for the cancelled fares although he was aware some other drivers told him it was $6.00.

25. Uber reserves the right to charge cancelled fare passengers up to $10.00 per cancelled ride. Per Uber, as of May 1, 2012, "Drivers make a commitment to come to you after they accept a trip request. It costs them time and money to get to you. After more than 5 minutes, it's only fair that drivers are compensated for the time spent." Yet, Plaintiff never once received a payment from Uber for a cancelled fair. See https://newsroom.uber.com/updated-cancellation-policy/.

26. Uber also told drivers that they would receive a discount card that would entitle them to a discount for fuel once they completed a certain number of rides. Plaintiff is unaware of anyone receiving such card nor did he receive such card.

27. Uber routinely misleads its drivers regarding the amount of money that they can earn. For example, Uber told drivers they can earn guaranteed money working at certain times. However, Plaintiff is unaware of any Wisconsin driver making a guaranteed hourly rate nor did he receive a guaranteed rate. Uber also marketed to Plaintiff that he could earn wages

far in excess of what drivers were actually capable of earning.

   **C.**  **Uber Increases its Profits by Misappropriating its Drivers' Tips.**

  28. During the course of their employment, Plaintiff did not receive gratuities.

  29. Uber told customers, on its website and in marketing materials, that gratuity is included in the total cost of the fare for the car service and that there is no need to tip the driver.

  30. Uber intentionally misrepresented to customers that gratuity was included in the cost of its fares and thus instructed passengers not to leave a tip in addition to the amount of the fare.

  31. Uber also misrepresented to its drivers, via its training video, that tips would be added to their wages. Uber told drivers not to ask for or accept tips because passengers would tip based on service by selecting a percentage on the Uber application and the tips would then be passed on to the drivers, including Plaintiff.

  32. Drivers were instructed by Uber to refuse tips should a passenger offer a tip.

  33. Despite Uber's misrepresentations to customers that "there's no need to tip" and its misrepresentations to Plaintiff and other drivers that tips would be added to their wages, Plaintiff and other drivers did not receive their gratuities.

  34. As a result of Uber's misrepresentations to customers that gratuity is included in the cost of its service and there is no need to tip drivers, Plaintiff and other Uber drivers have been deprived of payments to which they are entitled.

   **D.**  **Uber Increases its Profits by Misclassifying its Drivers as Independent Contractors.**

  35. Uber uniformly misclassifies its drivers, including Plaintiff, as independent contractors when they are employees.

36. Despite Defendants' position that Uber's drivers are independent contractors, Uber tells the drivers what price to use, pays the driver directly from fares collected from the customer, makes direct deposits in the drivers' bank accounts, provides the drivers with a pay statement, monitors the drivers' number of trips and hours on line and tracks their acceptance rate and driver rating. In addition, the drivers are under agreements with Uber that direct and define their duties, responsibilities and other employment related issues. Although the Uber driver uses her own car, Uber has to approve it. Uber treats the drivers as employees, unless it costs it money, evidenced by its actions related to expenses and gratuities.

37. Uber is deeply involved in marketing its transportation services, qualifying and selecting drivers, regulating and monitoring drivers' performance (including disciplining or terminating those who fail to meet standards), and setting prices. In fact, Uber does all of the marketing for its drivers.

38. Uber exercises exclusive control over the qualification and selection of its drivers. Before working for Uber, applicants must first complete Uber's application process, including a background check, city knowledge exam, vehicle inspection, and personal interview.

39. Uber exercises considerable control and supervision over the work details of its drivers - the manner, methods, and means of its drivers' provision of transportation services. For example, upon signing an agreement to work for Uber, new drivers must watch a video demonstrating how Uber wants them to interact with customers. Drivers are even instructed on such simple tasks as how to pick up a customer with their car. In short, Uber retains all necessary control over its drivers' performance.

40. Uber controls the instrumentalities of Plaintiff's job. For example, drivers cannot use a car that is more than ten (10) years old and Uber controls its drivers' car registrations.

8

Case 2:16-cv-00794-LA   Filed 06/24/16   Page 8 of 19   Document 1

41. Uber monitors its drivers to ensure compliance with Uber's quality control standards. All drivers for Uber, including Plaintiff, must maintain an average customer star evaluation of at least 4.5 out of a possible 5 stars. Instructions on how to improve one's star rating are given to drivers who fall below this average in any given week. If a driver fails to maintain an average customer rating of 4.5, Uber deactivates the driver's ability to use the application to pick up customers, an action tantamount to terminating the driver "at will," a hallmark of an employee-employer relationship. Thus, monitoring through rider ratings is an effective mechanism for Uber to enforce its standards.

42. Uber also unilaterally sets the fares - with no negotiation or input from drivers - for all rides, and drivers are required to charge the cost determined solely by Uber. Uber then bills customers for the entire amount before remitting a portion of the fare to its drivers. Uber pays its drivers weekly.

43. Uber claims a proprietary interest in its riders, which further demonstrates that Uber acts as more than a mere intermediary between riders and drivers. For instance, Uber prohibits its drivers from answering rider queries about booking future rides outside the Uber application or otherwise soliciting Uber riders.

44. As a result of the intentional misclassification of its employees, Uber failed to provide Plaintiff and other similarly aggrieved driver employees with itemized wage statements, minimum wages, and reimbursement for necessary expenses (*e.g.*, gas, tolls, car repairs, and lease payments). Uber also failed to keep accurate payroll records evidencing Plaintiff' and other drivers' hours worked and wages paid and unlawfully retained gratuities owed to Plaintiff and other drivers, despite representing to customers and its drivers that gratuity is included in the total cost of the service.

## CLASS ALLEGATIONS

45. Plaintiff brings this class action pursuant to Rule 23 of the Federal Rules of Civil Procedure, on behalf of himself and all other similarly situated individuals, as defined:

46. All individuals who have worked or are currently working for Uber as drivers within the State of Wisconsin.

47. Subject to additional information obtained through further investigation and discovery, the foregoing definition of the Class may be expanded or narrowed by amendment or amended complaint. Excluded from the Class are Defendants and its affiliates, parents, subsidiaries, employees, officers, agents, and directors; government entities or agencies, its affiliates, employees, officers, agents, and directors in their governmental capacities; any judicial officer presiding over this matter and the members of their immediate families and judicial staff; and class counsel.

48. This action is properly maintainable as a class action. The proposed Class is so numerous that joinder of all members is impracticable.

49. Plaintiff is a member of the Class he seeks to represent.

50. There are questions of law or fact common to the Class, which predominate over any questions affecting only individual members. Among the questions of law and fact common to the class include but are not limited to:

    a. Whether Defendants have charged customers a gratuity for class members' services;

    b. Whether Defendants failed to distribute the total proceeds of those gratuities to the class members;

      c.      Whether Defendants have informed customers that gratuity is included in the price of the Uber service and so there is no need to tip the drivers;

      d.      Whether class members have suffered damages based upon Uber's representation to customers that there is no need to tip the drivers;

      e.      Whether Defendants improperly classified class members as independent contractors rather than employees;

      f.      Whether class members have been required to pay the expenses of their employment, including the cost of a vehicle, repairs, gas and tolls;

      g.      Whether Uber unlawfully denied compensation to Class members; and

      h.      Whether Class members were denied employee benefits as required by law.

47.      The representative Plaintiff can adequately represent the Class. No conflict of interest exists between the representatives and the Class members or with respect to the claims for relief requested.

48.      The claims of the proposed lead Plaintiff are typical of those of the proposed Class because they are based on the same legal theories and arise out of the same business practices and course of conduct by Uber.

49.      The proposed lead Plaintiff and his chosen attorneys are familiar with the subject matter of the lawsuit and have full knowledge of the allegations contained in this complaint so as to be able to assist in its prosecution. In addition, the representative's attorneys are competent in the relevant areas of the law and have sufficient experience to vigorously represent the Class. Furthermore, the resources available to counsel ensure that the litigation will not be hampered by a lack of financial capacity. Plaintiff's attorneys have sufficient financial resources and are willing to absorb the costs of the litigation.

50. The proposed class action is the surest way to fairly and expeditiously compensate so large a number of injured persons; to keep the courts from becoming paralyzed by hundreds, perhaps thousands of repetitive cases, and to reduce transaction costs so that the injured Class can obtain the most compensation possible, class treatment presents a superior mechanism for fairly resolving similar issues and claims without repetitious and wasteful litigation.

51. Class certification is also appropriate pursuant to Rule 23 because common questions of fact and law predominate over any questions affecting only individual members of the Class, and because a class action is superior to other available methods for the fair and efficient adjudication of this litigation. The Class members have been damaged and are entitled to recovery as a result of Defendants' common and discriminatory policies and practices.

## COUNT I:
## TORTIOUS INTERFERENCE WITH PROSPECTIVE BUSINESS RELATIONS

52. Plaintiff, on behalf of himself and the proposed class, repeats and realleges all preceding paragraphs as if fully set forth herein.

53. Defendants' website sets forth:

> **DO I NEED TO TIP MY DRIVER?**
>
> You don't need cash when you ride with Uber. Once you arrive at your destination, your fare is automatically charged to your credit card on file – there's no need to tip.

54. In reality, Uber collected gratuities and failed to remit them to the drivers.

55. Based on past practices of failing to remit gratuities, Uber knew that it was going to retain the tips for itself when it misrepresented that tips would be passed on to the drivers.

56. Defendants' conduct, in failing to remit the total proceeds of gratuities to drivers constitutes unlawful tortious interference with the contractual and/or advantageous relationship that exists between the drivers and customers, under state common law.

57. Defendants' conduct, informing customers "there is no need to tip" constitutes unlawful tortious interference with the contractual and/or advantageous relationship that exists between the drivers and customers, under state common law.

58. Uber marketed in such a way that passengers believed the drivers would be tipped out of the fare the passenger was charged. Furthermore, passengers oftentimes expressed a desire to tip Plaintiff but did not tip as passengers likely thought it was already included in the fare.

59. Were it not for Uber's misrepresentations regarding gratuities, riders would have left a tip for drivers as is customary in the car-service industry.

60. Uber's conduct caused damage to Plaintiff and other drivers.

## COUNT II: BREACH OF CONTRACT

61. Plaintiff, on behalf of himself and the proposed class, repeats and realleges all preceding paragraphs as if fully set forth herein.

62. Defendants' conduct constitutes a breach of contract under state common law. Defendants have an implied contract with Plaintiff and the drivers to remit to them the total proceeds of all gratuities.

63. Plaintiff and other drivers are third-party beneficiaries of customers' implied contract with Uber that tips would be remitted to drivers, the terms of which were incorporated by reference from certain advertisements or statements Uber made on various webpages. By entering into this agreement, customers intended to secure a financial benefit for drivers, including Plaintiff, in the form of gratuity and to act directly for the drivers' benefit.

64. Uber withheld and continues to withhold gratuities given by customers to Uber drivers and/or gratuities that are incorporated into the set fare.

65. Uber contracted with Plaintiff and other drivers to pay surge fares, to provide a credit card entitling drivers to a discount on gas, and to pay $6.00 for cancelled fares.

66. Uber has failed to pay surge fares, to provide a credit card entitling drivers to a discount on gas, and to pay $6.00 for cancelled fares.

67. Uber's conduct damaged Plaintiff and other drivers.

## COUNT III: UNJUST ENRICHMENT

68. Plaintiff, on behalf of himself and the proposed class, repeats and realleges all preceding paragraphs as if fully set forth herein.

69. In Wisconsin, there are three elements of a claim for unjust enrichment: (1) a benefit conferred upon the defendant by the plaintiff; (2) an appreciation or knowledge by the defendant of the benefit; and (3) acceptance or retention by the defendant of the benefit under circumstances making it inequitable for the defendant to retain the benefit without payment of its value. As the facts demonstrate, Defendants' have been unjustly enriched.

70. Defendants unlawfully retained gratuities, cancelled fare charges, and surge fares promised to Plaintiff and other drivers and furthermore, did not reimburse Plaintiff's expenses that were incurred in the furtherance of Uber's business.

71. Uber obtained these benefits from Plaintiff and drivers by making material misrepresentations and taking advantage of them. Plaintiff and the proposed Class have suffered damages as a result of Defendants' actions.

72. As a result, Defendants have been unjustly enriched.

73. Uber's conduct damaged Plaintiff and other drivers.

74. Plaintiff and the class members are entitled to restitution for their full share of the proceeds of the improperly retained gratuities and employment related expenses.

## COUNT IV: CONVERSION

75. Plaintiff, on behalf of himself and the proposed class, repeats and realleges all preceding paragraphs as if fully set forth herein.

76. Plaintiff and other drivers had the right to possession of tips, surge fares, cancellation fees, and money spent for expenses.

77. Uber interfered with Plaintiff and the other drivers' right to their property by refusing to relinquish the property to them. Instead, Uber retained the property for its own benefit. Under Wisconsin law, Uber's theft is actionable through a claim for conversion.

78. The converted property was personal. For example, tips were specifically earmarked for Plaintiff and other drivers yet Uber willfully failed to remit the tips to Plaintiff and the proposed Class.

79. Uber's conduct damaged Plaintiff and other drivers. Plaintiff were harmed and class members are entitled to restitution for their full share of proceeds, as well as treble damages.

## COUNT V: UNFAIR COMPETITION

80. Plaintiff, on behalf of himself and the proposed class, repeats and realleges all preceding paragraphs as if fully set forth herein.

81. Defendants' activities have caused confusion with, or have been mistaken for, Plaintiff's activities in the mind of the public, or are likely to cause such confusion or mistake; or Defendants have acted unfairly in the State of Wisconsin in some manner.

82. Plaintiff's property rights, specifically gratuities, cancellation fees, surge fares and expenses, were misappropriated by Defendants for their commercial advantage.

83. Defendants' conduct damaged Plaintiff and other drivers.

## COUNT VI: FRAUD AND MISREPRESENTATION

84. Plaintiff, on behalf of himself and the proposed class, repeats and realleges all preceding paragraphs as if fully set forth herein.

85. Defendants made material representations of fact, that the Plaintiff would receive gratuities, surge fares and cancellation fees.

86. Defendants also misrepresented the average rate of pay its drivers were making to Plaintiff and other Wisconsin Uber drivers.

87. These misrepresentations were material because they affected Plaintiff and other drivers' decisions to continue driving for Uber.

88. Uber knew at the time it made these misrepresentations—or, at the very least, made the misrepresentations recklessly—that it would not pass along these monies to Plaintiff and other drivers based on its past practices of not doing so.

89. Plaintiff and other drivers reasonably and justifiably relied on these misrepresentations and continued to drive for Uber because Uber was their employer and the party responsible for overseeing the payment of these monies.

90. Uber's conduct damaged Plaintiff and other drivers.

**COUNT VII: VIOLATIONS OF THE STATE OF WISCONSIN MINIMUM WAGE AND LABOR LAW**

91. Plaintiff, on behalf of himself and the proposed class, repeats and realleges all preceding paragraphs as if fully set forth herein.

92. Plaintiffs and the Class are employees within the meaning of Wis. Stat. § 104.01(2) and Wis. Stat. § 109.01(1r).

93. Defendants were employers within the meaning of Wis. Stat. § 104.01(3).

94. At all times material herein, Plaintiff and the Class have been entitled to the rights, protections, and benefits provided under Wisconsin Wage Payment Laws including overtime premiums for all hours worked in excess of forty hours each work week.

95. Plaintiff and the Class are victims of uniform and company-wide policies and practices in violation of Wisconsin Wage Payment Laws in misclassifying employees as independent contractors and in failing to pay them minimum wage and minimum wage and overtime premiums for all hours worked in excess of forty each work week.

96. Defendants have violated Wisconsin Wage Payment Laws by misclassifying employees as independent contractors and in failing to pay them minimum wage and overtime premiums for all hours worked in excess of forty each work week.

97. Pursuant to Wis. Adm. Code § DWD 272.03, all employees are required to be paid $7.25 per hour. Uber's payments to Plaintiff and the proposed Class amount to less than $7.25 per hour.

98. Wisconsin Uber drivers cannot be classified as tipped employees as Uber prohibits the drivers from accepting tips and furthermore, any tips that Uber has received, Uber has failed to remit those tips to Plaintiff and the proposed Class. This constitutes a violation of Wisconsin law.

99. Wisconsin Wage Payment Laws exempt certain employees from minimum wage and overtime pay. None of these exemptions apply to Plaintiff and the Class.

100. Pursuant to Wis. Adm. Code § DWD 274.01(4), overtime means "hours in excess of 40 hours of work per week." Wisconsin Uber drivers routinely work more than 40 hours per week and are not paid overtime.

101. Defendants were required to pay its drivers overtime pay at the rate of one and one-half times the regular rate of pay and have failed to do so. Wis. Adm. Code § DWD 274.03.

102. Defendants' failure to pay minimum wage and overtime to Plaintiff and the Class was willfully perpetrated.

103. Defendants had no reasonable grounds to believe their actions were not a violation of Wisconsin Wage Payment Laws.

104. As such, Plaintiff and the Class are entitled to recover an award of liquidated damages in an amount up to fifty percent of the unpaid minimum wage and overtime premium, pursuant to Wis. Stat. § 109.11.

105. Plaintiff and the Class are entitled to their reasonable attorneys' fees and costs expended in bringing this action.

## **REQUEST FOR RELIEF**

**WHEREFORE**, Plaintiff individually and on behalf of the proposed class, requests relief against the Defendants as follows:

a. An award of damages, including compensatory, punitive, treble damages, liquidated damages and back pay, in an amount to be determined at trial;

b. Notice to the Class of the action;

c. An injunction against Defendants prohibiting Defendants from engaging in each of the unlawful practices, policies and patterns set forth herein;

d. Reasonable attorneys' fees and costs of this action;

e. Pre-judgment and post-judgment interest as provided by law; and

f. An Order requiring that Defendants return to Plaintiff any gratuities and any other funds wrongfully kept by Defendants;

g. Such other and further relief that the Court may deem just and proper.

## JURY DEMAND

Plaintiff, on behalf of himself and the proposed class, demands a trial by jury on all claims so triable.

Respectfully submitted,

THE MAHANY LAW FIRM

*/s/ Brian H. Mahany*
Brian H. Mahany
Wisconsin Bar No. 1065623
ED Wisconsin Bar Member
P.O. Box 511328
Milwaukee, Wisconsin 53202
Telephone: 414.258.2375
Facsimile:   414.258.2521
brian@mahanylaw.com

*/s/ Timothy J. Granitz*
Timothy J. Granitz
Wisconsin Bar No. 1088934
ED Wisconsin Bar Member
P.O. Box 511328
Milwaukee, Wisconsin 53202
Telephone: 414.258.2375
Facsimile:   414.258.2521
tgranitz@mahanylaw.com

ATTORNEYS FOR PLAINTIFF